MITCHELL *v.* WESTERN FIRE INSURANCE CO.

1. INSURANCE—LOCAL AGENT—AUTHORITY—ADJUSTMENT OF LOSSES.
   The authority of a local insurance agent to solicit and write insurance, report claims, etc., does not carry with it the authority to adjust losses.

2. SAME—ESTOPPEL—APPARENT AUTHORITY.
   Insurer may be estopped from repudiating acts of its local agent in excess of his authority, where it has clothed him with apparent authority to perform such acts, yet all elements

of an estoppel must be present, the authority must have been actually apparent to the third person who must have dealt with the agent in reliance thereon in good faith and in the exercise of reasonable prudence.

3. SAME—REPUDIATION OF LOCAL AGENT'S UNAUTHORIZED ACTS.

Automobile collision insurer who repudiated its local agent's acts in promising to pay for car repairs after having it taken to plaintiffs' garage after collision *held,* not estopped to do so, where there is no evidence that plaintiffs were aware of, or relied on, any conduct of insurer holding out the local agent as possessing the authority to bind insurer for repairs.

4. PRINCIPAL AND AGENT—APPARENT AUTHORITY—EVIDENCE.

The apparent authority of an agent cannot be established by the statements or conduct of the agent, the principal being liable only for that appearance of authority caused by itself.

5. INSURANCE—ESTOPPEL—LOCAL AGENT—ADJUSTER.

Silence of collision insurer's adjuster upon his visit to plaintiffs' garage while car was being repaired *held,* an insufficient basis for ratification or estoppel as to insurer's local agent's promise to pay for repairs, where there is no showing that he was aware that car was being repaired upon order of insurer's local agent.

6. PRINCIPAL AND AGENT—NOTICE OF UNAUTHORIZED ACTS.

A principal cannot be charged with knowledge of his agent's acts performed outside the scope of his authority.

7. INSURANCE—LOCAL AGENT—AUTHORITY.

Automobile collision insurer's failure to repudiate local agent's authority to bind it to pay for repairs on car made in plaintiffs' garage in letter written after repairs were made and denying agent's authority or his promise to pay therefor, *held,* not an admission that he had such authority nor did it estop insurer from raising defense of want of authority in its agent in action for amount due for repairs where plaintiffs do not claim to have acted upon such failure.

Appeal from Bay; Houghton (Samuel G.), J. Submitted April 11, 1935. (Docket No. 93, Calendar No. 38,299.) Decided June 3, 1935.

Assumpsit by Charles A. Mitchell and William B. Mitchell, copartners doing business as Bay City Auto Company, against the Western Fire Insurance Company, a foreign corporation, and Walter Kirschner for sums due for the repair of an automobile. Dismissed as to defendant Kirschner. Judgment for plaintiffs. Defendant appeals. Reversed.

*A. H. McMillan,* for plaintiffs.

*Hubert J. Gaffney,* for defendant Western Fire Insurance Company.

BUTZEL, J. Through its local agent, Emil Ludwig, of Flint, Michigan, the Western Fire Insurance Company of Fort Scott, Kansas, issued a policy to Mrs. Dorothy Kirschner, a resident of Flint, insuring her against loss or damage by reason of the upset or collision of a Cadillac five-passenger sedan. Ludwig represented defendant as well as a number of other insurance companies. He solicited business, wrote policies, and reported claims. He was not empowered to adjust or pay claims for defendant, but occasionally settled small claims at the request or with the permission of defendant's claims attorney. On August 1, 1931, Mrs. Kirschner's car was badly damaged in a collision while being driven by a friend, Miss Fenwick, and the car was towed to the garage of the Bay City Auto Company, conducted by Charles A. Mitchell and William B. Mitchell, copartners, and plaintiffs herein. Upon the latter's refusal to touch the car until word was received from the insurance company, Miss Fenwick called Ludwig by telephone from plaintiffs' garage, and William B. Mitchell took the wire. He testified that Ludwig inquired as to the condition of the car, and that after

this information had been given, Ludwig stated that the car was fully covered in every respect, no matter who was to blame for the accident, that the Kirschners needed the car in their business the worst way, and that plaintiffs should get right at it and take care of it.   In response to Mitchell's request for a letter of confirmation, Ludwig wrote to plaintiffs on August 3, 1931, as follows:

"This is to advise you that Mr. Walter Kirschner of Flint, Michigan, is covered through this office for full coverage collision insurance.

"The claim is now pending will be adjusted promptly upon receipt of itemized repair bill."

A day or two later Ludwig phoned Harry L. Wickey of Detroit, an attorney and adjuster for the defendant.   The record is barren of any evidence as to what was said in this conversation.   Wickey, however, went to Bay City and interviewed a number of people in regard to the accident.   He also examined the car at plaintiffs' garage, finding it already fairly well torn down in the process of repair, and he asked for an estimate, which was given him.   He said nothing to plaintiffs either as to the continuing or discontinuing of the work.   When the repairs were completed the plaintiffs did not assert their statutory lien for repairs, but released the car to the owner, and a general statement showing the cost of repairs to be $785.45, O.K.'d by the owner, "per R. Fenwick," was mailed to Ludwig, who in turn sent it to Wickey.   The latter wrote to Ludwig acknowledging receipt of the repair bill, but stating that he had not yet received the proof of loss and subrogation agreement, and requesting that they be signed and forwarded to him so that the loss might be paid. Defendant never received either the proof of loss or

the subrogation agreement, nor in any manner agreed to waive that requirement.

On June 20, 1932, Mr. Mitchell called Wickey in regard to the repair bill, and informed him that he had a letter from Ludwig authorizing the repairs to the car. A copy of this letter was later mailed to Wickey. On January 24, 1933, defendant's president wrote to the plaintiffs, unequivocally denying all liability to the garage. The letter stated, in part:

"We deny that our agent, Mr. Ludwig, authorized you to repair this car, or promised to pay your bill. He merely stated that the car was insured and that the claim would be adjusted. Naturally that adjustment would have to be made with the assured, from whom we require a proof of loss and release."

Although still denying liability, defendant subsequently tendered a check for $500 by way of settlement. This offer was refused, and plaintiffs brought suit, claiming that the telephone conversation with Ludwig on August 1, 1931, and his subsequent letter of confirmation, constituted a contract binding defendant to pay the cost of repairs directly to the garage; and that the subsequent conduct on the part of Wickey, and the correspondence carried on by the defendant company, constituted a ratification of Ludwig's act, and estopped defendant from repudiating his authority. Plaintiffs recovered judgment for the full amount of the claim and interest, before the trial court without a jury.

While we are much impressed with the apparent moral obligation of defendant to pay the claim, we nevertheless cannot overlook settled rules of law applicable to the facts in the instant case. Ludwig was solely a local agent, with authority to solicit and write insurance, report claims, etc. We have repeatedly held that the authority of a local agent to

perform the above acts does not carry with it authority to adjust the loss. *Barry & Finan Lumber Co.* v. *Citizens' Ins. Co.,* 136 Mich. 42; *Gambino* v. *Northern Ins. Co. of New York,* 232 Mich. 561; *Henne* v. *Glens Falls Ins. Co.,* 245 Mich. 378, 383; *Cohen* v. *London Guarantee & Accident Co., Ltd.,* 247 Mich. 226. While it is true that the company may be estopped from repudiating acts of the agent in excess of his authority, where the company has clothed the agent with apparent authority to perform such acts, yet all the elements of an estoppel must be present, and as quoted in *Marx* v. *King,* 162 Mich. 258, 266:

"The authority must, however, have been actually apparent to the third person who, in order to avail himself of the rights thereunder, must have dealt with the agent in reliance thereon in good faith, and in the exercise of reasonable prudence."

Also, see, *Clark* v. *Dillman,* 108 Mich. 625. There is no showing in the case at bar that plaintiffs, in entering into the alleged contract for repairs, were aware of, or relied on any conduct on the part of defendant, holding out Ludwig as possessing the authority to bind the company for repairs. And it is settled that apparent authority cannot be established by the statements or conduct of the agent, but that the principal is liable only for that appearance of authority caused by himself. *Fisk* v. *Liverpool, London & Globe Ins. Co.,* 198 Mich. 270; *Maryland Casualty Co.* v. *Moon,* 231 Mich. 56.

Plaintiffs insist that the silence of Wickey, defendant's adjuster, when he visited the garage and observed the repairs in progress, operated as a ratification of Ludwig's act, and estops the company from now repudiating his authority. Even assuming that Wickey was possessed of the authority to

ratify such an act, his silence clearly cannot be the basis for any finding of ratification or estoppel, in view of the absence of any showing in the record that Wickey at the time was aware that the car was being repaired at Ludwig's order. *David Stott Flour Mills* v. *Saginaw County Farm Bureau,* 237 Mich. 657; *Cowan* v. *Sargent Manfg. Co.,* 141 Mich. 87; *Heyn* v. *O'Hagen,* 60 Mich. 150. A principal cannot be charged with knowledge of his agent's acts performed outside of the scope of his authority. *Night Commander Lighting Co.* v. *Brown,* 213 Mich. 214.

Some claim is made that defendant's failure to repudiate Ludwig's authority in its letter of January 24, 1933, constituted an admission that Ludwig had authority to bind the company for the repairs, and estops defendant from now raising that defense. There is no merit in this contention. No claim is made that plaintiffs took any action in reliance on defendant's failure to deny Ludwig's authority in the above letter, and we are unable to see how the mere failure of the company to raise the defense in question at that time, prior to starting of suit, can operate to create a contractual liability which never existed. See *Ames* v. *Auto Owners Ins. Co.,* 225 Mich. 44, and *Ruddock* v. *Detroit Life Ins. Co.,* 209 Mich. 638.

We are constrained to reverse the judgment of the lower court and remand the case for entry of judgment in favor of defendant. Defendant will recover costs.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.